PEGGY JO SMITH

VERSUS

MEDTRONIC

NUMBER 566,310-C

1ST JUDICIAL DISTRICT COURT

CADDO PARISH, LOUISIANA

## PETITION FOR DAMAGES

NOW INTO COURT, by and through undersigned counsel, comes the Plaintiff, Peggy Jo Smith, a person of full age of majority and residents of Caddo Parish, State of Louisiana, filing suit against the Defendant named herein, showing the Court as follows, to-wit:

1.

Made defendant herein is:

1) MEDTRONIC, a manufacturer of medical devices with its world and U.S. headquarters located 710 Medtronic Parkway, Minneapolis, MN 55432-5604, and its principle business establishment in Louisiana being 3900 North Causeway Blvd., Metairie, LA, 70002, which can be served through its agent for service of process, C T Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA 70807.

2.

MEDTRONIC is a manufacturing company that designed, manufactured, tested, marketed, distributed, promoted and/or caused to be manufactured the INFUSE Bone Graft System (hereinafter, Defective Product).

3.

Venue is proper in this court because on August 16, 2011, the Defective Product was implanted in Peggy Jo Smith at Willis Knighton Pierremont Health Center located at 8001 Youree Drive, Shreveport, Caddo Parish, Louisiana.

4.

At all pertinent times herein, Peggy Jo Smith was not married.

5.

On or about March 3, 2011, Peggy Jo Smith presented to Powell Britton-Auer, M.D. for complaints related to back pain.

S. Hamm

Page 1 of 8

FAX FILED
FEB 19 2013
TORI HAYES
DEPUTY CLERK OF COURT

PGS 8 EXH 3 MIN V
CC___ CP___ MAIL___ N/J___
INDEX 2 REC___ FAX V
W/D DOC___ CERT MAIL___
SERVICE___

6.

On or about August 12, 2011, Ms. Smith underwent the first of two surgical spine procedures. The surgery was performed by Dr. Auer at Willis Knighton Pierremont Health Systems located in Shreveport, Louisiana.

7.

On or about August 16, 2011, Ms. Smith underwent the second of two surgical spine procedures. The surgery was performed by Dr. Auer with the assistance of Milan Mody, M.D. at Willis Knighton Pierremont Health System located in Shreveport, Louisiana.

8.

During the surgery performed on August 16, 2011, Dr. Auer and Dr. Mody implanted the Medtronic INFUSE Bone Graft from T2 to S1 as follows:

1) INFUSE Bone Graft
   Ref: 7510800
   Lot M111052AAG
   Large II Kit 8.0 ml

2) INFUSE Bone Graft
   Ref: 7510800
   Lot M111052AAG
   Large II Kit 8.0 ml

3) INFUSE Bone Graft
   Ref: 7510800
   Lot M111052AAG
   Large II Kit 8.0 ml

4) INFUSE Bone Graft
   Ref: 7510800
   Lot M111052AAG
   Large II Kit 8.0 ml

9.

After the surgery, Ms. Smith experienced problems, including but not limited to severe neurological injury and pain along with decreased mobility. In October of 2012, the patient learned the surgery had failed as a result of the problems created by the Defective Product.

10.

Ms. Smith continued to experience problems related to the Defective Product. On January 9, 2012, the patient underwent additional spinal procedures to address the issues created by the Defective Product.

11.

In 2002, the FDA granted Medtronic approval for its INFUSE Bone Graft for the limited use in the lumbar spine and some oral and dental procedures as well as open fractures on the tibia.

12.

Despite the FDA's approval for limited use, Medtronic encouraged off label use for the Defective Product, including but not limited to cervical and thoracic spine procedures..

13.

Moreover, Medtronic paid large "consulting" and other fees to doctors who authored articles in medical journals that downplayed the dangers associated with the INFUSE Bone Graft System. Medtronic had a significant role in the drafting, editing and final content of the articles that resulted in a inaccurate portrayal of the product's dangers.

14.

The Defective Product contains recombinant human Bone Morphogenetic Protein (rhBMP), a genetically engineered synthetic liquid protein that is a version of a protein naturally released by the body used to initiate bone growth in specific areas of the spine. Use of the Defective Product can cause multiple problems including but not limited to, neurological injury, uncontrolled bone growth along with continued chronic pain. The Defective Product has also been linked to cancer, including but not limited to lung, leukemia, breast, skin and other cancers.

15.

It has become necessary for Ms. Smith to bring this action because of injuries and damages sustained as a result of the Defective Product. Defendant received substantial compensation and profits from the Defective Product, and made material omissions and misrepresentations and breached warranties in Louisiana. Defendant is jointly and solidarily liable to the Ms. Smith.

16.

Defendant failed to produce and manufacture the Defective Product according to the specifications required by the FDA. Further, Defendants made material omissions to the FDA, the medical community and the public regarding the Defective Product.

17.

Defendant failed to provide FDA with available information regarding the Defective Product that would have led to an alternative design that would have prevented the harm suffered by Ms. Smith.

18.

Defendant failed to provide adequate information and made material omissions regarding the "substantial equivalent" status and nature of the Defective Product. Defendant further failed to conform to Medtronic's own specific representations.

19.

As a direct result of Defendant's' Defective Product the patient, Peggy Jo Smith suffered and continued to suffer complications of the Defective Product including but not limited to, severe neurological injury and pain along with decreased mobility along with fear of developing cancer as a result of the Defective Product.

20.

Defendant is in the business of developing, manufacturing, promoting, marketing, selling and distributing the Defective product.

21.

At all times relevant hereto, Defendant herein knew or should have known of the defective nature of their product as set forth herein, yet continued to design, manufacture, market, distribute and sell their products so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by these products. At all times hereto, Defendant herein knew or should have known that the Defective Product was and are causally related to and associated with severe and life threatening complications and side effects including,

but not limited to, severe neurological injury and pain along with decreased mobility and cancer. Moreover, defendants downplayed the possibility and extent of complications.

22.

Defendants have and continue to falsely and fraudulently misrepresent a number of facts regarding the Defective Product, including, without limitation: the adequate testing of the Defective Product, the severity and frequency of side effects, adverse medical conditions caused by the Defective Product, the status and nature of the "substantial equivalent" status of the Defective Product as well as provide information that would have led to an alternative design which would have prevented the harm sustained by Ms. Smith.

23.

Defendant's Defective Product designed, manufactured, sold and/or supplied by Defendants, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed and/or as manufactured, taking into account the utility of the product and the risk involved in its use.

24.

The Defective Product designed, manufactured, distributed, sold and/or supplied by the Defendant was defective due to inadequate testing, failure to manufacture the product as required by the FDA, failure to manufacture to conform to Medtronic's own specific representation, and failure to provide information to the FDA that would have resulted in an alternative design that would have prevented the harm sustained by the patient and the making of material omissions to the FDA, the medical community and the public. As a result of the Defective Product and necessary treatment as a result of injuries caused by the Defective Product, Ms. Smith has sustained injuries and damages, and/or the aggravation and exacerbation of pre-existing medical conditions.

25.

Additionally, Defendant failed to provide timely and adequate post-marketing warnings or instructions after the manufacturer knew of the risk of injury from the Defective Product via post-marketing data. The defective nature of this product is a cause of Ms. Smith's injuries.

Page 5 of 8

26.

Defendant has and continues to have a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of the Defective product into the stream of commerce. Defendant failed to exercise ordinary care in the design, manufacturer, marketing, sale, testing and/or distribution of the Defective Product. Defendant knew or should have known that the Defective Product created an unreasonable risk of bodily harm, including the risk of permanent disability. Further, Defendant knew or should have known that the Defective Product was not manufactured according to FDA specifications or Medtronic representations.

27.

Despite the fact that Defendant knew or should have known that the Defective Product used unreasonably, dangerous side effects which physicians would be unable to remedy by any means, Defendant continued to market, and to this day continues to market the Defective Product to physicians when there were and are adequate and safer alternative methods of treatment or opportunities for more meaningful and effective warnings.

28.

Defendant's conduct in this matter was contributing cause of injuries and damages suffered by Ms. Smith.

29.

Where defendant seller while knowing of the vice as described above failed to declare it to plaintiff purchaser, defendant seller is liable for all damages including reasonable attorney's fees as provided by Louisiana Civil Code arts. 2525 and 1953 et. seq.

30.

The Defective Product is an unreasonably dangerous product as defined by the Louisiana Revised Statute 9:2800.1 et seq. (The Louisiana Products Liability Act) and the Defendant is liable for all injuries proximately caused thereby.

31.

As a result of the use of the aforementioned Defective Product, Peggy Jo Smith has sustained injuries and damages, and/or the aggravation and exacerbation of pre-existing medical conditions, due to the Defective Product. Plaintiff also suffers a justifiable fear that such conditions will worsen in the future as well as a fear that she might develop cancer.

32.

Petitioner also shows that the doctrine of *res ipsa loquitor* is applicable herein in that the aforementioned events could not reasonably have occurred absent the actions of Medtronic.

33.

Petitioner further shows that judicial interest begins to accrue from the date of the filing of this complaint.

34.

Petitioner further shows that the amount in dispute in this litigation does exceed Seventy-five Thousand and NO/100 Dollars ($75,000.00), exclusive of interest and costs.

35.

It will be necessary to use expert witnesses at the trial of this case, and their fees, together with any expenses for the taking of the depositions, should be fixed and taxed as costs.

36.

As a result of Defendant's Defective Product, Petitioner as sustained the following damages:

(a) Past and future medical and health care expenses, including, without limitation, the cost of consultations with physicians about the damages and potential future damages caused by the Defect Product;

(b) Physical disability and disfigurement;

(c) Past and future emotional distress, including, without limitation, justifiable fear of disease;

(d) Loss of capacity for enjoyment of life;

(e) Physical and mental pain and suffering;

(f) Past and future mental anguish;

(g) Lost income and support as well as loss of earning potential.

## JURY DEMAND

### PLAINTIFFS DEMAND TRIAL BY JURY IN THIS MATTER.

WHEREFORE, Petitioner prays that Defendant be served with a copy of the Petition and be cited to appear and answer same, and that after due proceedings be had, including trial by jury, judgment be rendered in favor of Petitioner and against defendant severally and *in solido* in an amount to compensate the Petitioner for all damages to which she is entitled by law; for legal interest on all damages awarded from date of judicial demand until paid; for the costs of this litigation; and for such other and further damages and relief as this Court may deem just and proper.

Respectfully submitted,

_____
SUSAN E. HAMM   Bar No. 21654
A Professional Law Corporation
7600 Fern Avenue - Building 900
Shreveport, LA 71105
Tel: (318) 797-0100
Fax: (318) 797-0083

ATTORNEY FOR PLAINTIFF

**PLEASE SERVE:**

MEDTRONIC
through its agent for service of process:

C T Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70807